UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 2:11-CR-616 |
| § | (CIVIL ACTION NO. 2:13-CV-297) |
| ANTHONY PEREZ-BATISTA § | |

**ORDER DISMISSING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Defendant Anthony Perez-Batista's (Perez-Batista) motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and his memorandum in support. D.E. 49, 50. The Court has reviewed the § 2255 motion and concludes that summary dismissal pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts (2013) (2255 Rules) is appropriate.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

### II. FACTUAL BACKGROUND AND PROCEEDINGS

**A.     Summary of Offense**

Perez-Batista, a citizen of the Dominican Republic, was found near Freer, Texas in Duval County in May 2011. D.E. 1. Border Patrol Agents determined that he was illegally in the United States at the time he was stopped. Id. He was previously deported from the United States in 2007. Id. He was arrested and charged with Illegal Reentry. Id.

### B.     Criminal Proceedings

After his arrest Perez-Batista was appointed counsel. D.E. 2. He was indicted for Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b) and arraigned the following week. D.E. 7, Minute Entry June 30, 2011.

Perez-Batista entered into a plea agreement with the government and was rearraigned before a federal Magistrate Judge. D.E. 16, 17, 18. During rearraignment, Perez-Batista acknowledged that he had the indictment, it was read to him in Spanish, he understood the charge, and discussed it with his attorney. D.E. 38 at 10. Perez-Batista identified the Plea Agreement he signed, testified that it was read to him in Spanish, and he discussed it with his attorney before he signed it. Id. at 15-19. The Magistrate Judge advised Perez-Batista of the maximum punishment of 20 years, followed by supervised release of up to 3 years, a fine of up to $250,000, and a special assessment of $100. Id. at 19. Perez-Batista testified that he understood the maximum punishment. Id. at 20-22. He was generally warned that his guideline punishment range would be based upon the present offense and his criminal history using the Sentencing Guidelines. He testified that he understood the concepts and had discussed them with his attorney. Id. He was additionally warned that his previous conviction(s) could increase his offense level by 16 points. Id. at 21-23. Perez-Batista testified he understood the increase. Id. He testified that his decision to plead guilty was voluntary. Id. at 24. After the government outlined the facts it relied upon to charge Perez-Batista with Illegal Reentry, he testified that he was a citizen of the Dominican Republic, not of Guatemala, but otherwise everything was correct. Id. at 25-26.

The Probation Department prepared the Presentence Investigation Report (PSR) which calculated both Perez-Batista's offense level and criminal history points. D.E. 22. Illegal Reentry

carries a base offense level of 8, but a conviction for a prior drug trafficking offense adds 16 points to the base offense pursuant to § 2L1.2(b)(1)(A)(i) of the sentencing guidelines. Perez-Batista received a credit of 3 points for his acceptance of responsibility, which resulted in a total offense level of 21. Id. at ¶¶ 17-21.

The PSR noted Perez-Batista's previous drug trafficking convictions in 1995 and 1998 resulted in no criminal history points. Id. at ¶¶ 23-24. Perez-Batista was convicted of felony attempted criminal sale of cocaine in 2001, for which he was sentenced to 5 years probation and which caused him to be assessed a criminal history point. Id. at ¶ 25. In 2006, Perez-Batista was convicted of a misdemeanor possession and a felony drug trafficking offense for which he was assessed 2 and 3 points, respectively. Id. at ¶¶ 26-27. His total criminal history points were 6, resulting in application of criminal history category III. Id. at ¶¶ 28-29. The guideline imprisonment calculation for Perez-Batista's Illegal Reentry was 46-57 months. Id. at ¶ 47. No objections were filed to the PSR. D.E. 36 at 4.

At sentencing, Perez-Batista testified that he had received his PSR, had it for 35 days and discussed it with counsel. D.E. 36 at 3-4. He testified he was satisfied with the efforts and advice of counsel. Id. at 3-4. Perez-Batista further testified there were no mistakes in the PSR. Id. at 4. The Court sentenced Perez-Batista to 54 months imprisonment, no supervised release, no fine, and no special assessment. Id. at 10. The Court advised him of his right to appeal. Id. at 7.

Perez-Batista filed a timely appeal. The Fifth Circuit dismissed the appeal as frivolous. D.E. 48. He then timely filed his motion pursuant to 28 U.S.C. § 2255. D.E. 49.

### III. MOVANT'S ALLEGATIONS

Perez-Batista claims that his counsel was ineffective for failing to argue for fast track downward departure. D.E. 50 at p. 2. Additionally, he claims that his deportation proceedings

were constitutionally deficient and deprived him of due process. Id. at 4. He claims that counsel should have prepared a defense to his indictment for Illegal Reentry based upon the deficient previous removal and counsel's failure to do so constituted ineffective assistance of counsel. Id. Finally, Perez-Batista claims that counsel provided ineffective assistance at sentencing for his failure to present evidence of Perez-Batista's cultural assimilation. Id. at 13.

## IV.  ANALYSIS

### A.  28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

### B.  Ineffective Assistance of Counsel

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States

v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C. Trial Counsel's Alleged Ineffective Assistance

1. *Fast track*

Perez-Batista claims that counsel should have argued for downward departure pursuant to the fast track program. He was sentenced in November 2011. The Corpus Christi Division of the Southern District of Texas did not initiate a fast track program until 2012.[1] Additionally, Perez-Batista would not have qualified due to his multiple previous drug trafficking offences.[2]

---

[1] In January 2012, the Attorney General issued a Memorandum on Department Policy on Early Disposition or "Fast-Track Programs. http://www.justice.gov/dag/fast-track-program.pdf. That Memorandum reflected a change in policy to use fast track programs in all districts and to establish uniform guidelines for the use of the policy to become effective on March 1, 2012. Id.

[2] The Memorandum was clear, "This policy does not, however, alter the criteria for prosecutorial discretion on whether to charge a particular defendant, nor does it require prosecuting additional cases." Id. at p. 1. Additionally, the government determined eligibility criteria for Illegal Reentry defendants that included,

> Districts prosecuting felony illegal reentry cases (8 U.S.C. § 1326)—the largest category of cases authorized for fast-track treatment—shall implement an early disposition program in accordance with the following requirements and the exercise of prosecutorial discretion by the United States Attorney:

"The decision that a defendant be 'fast-tracked' is not made by the defendant but by the United States Attorney." <u>United States v. Martinez-Trujillo</u>, 468 F.3d 1266, 1269 (10th Cir. 2006). Perez-Batista has not shown that counsel was ineffective for failing to urge that Perez-Batista be sentenced pursuant to a program that did not exist in the Southern District, Corpus Christi Division and for which he did not qualify. No ineffectiveness is shown. <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

  2. *Failure to defend against offense based upon deportation due process violations*

Perez-Batista claims that his 2008 removal did not comply with the requirements of due process and that his counsel should have defended against his Illegal Reentry charge on that basis. A challenge to a prior deportation may be brought in a post-conviction proceeding. <u>See</u> 8 U.S.C. § 1326(d).[3] Yet Perez-Baptiste does not state that he ever brought the alleged defects in the 2008 removal to his counsel's attention, nor does he state particular facts regarding his

---

> A. Defendant Eligibility. The United States Attorney retains the discretion to limit or deny a defendant's participation in a fast-track program based on—
>  (1) The defendant's prior violent felony convictions (including murder, kidnapping, voluntary manslaughter, forcible sex offenses, child-sex offenses, *drug trafficking*, firearms offenses, or convictions which otherwise reflect a history of serious violent crime) . . . .

<u>Id.</u> at p. 3 (emphasis added).

[3] In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that--

 (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
 (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
 (3) the entry of the order was fundamentally unfair.

<u>Id.</u>

removal in 2008. Instead, Perez-Baptiste alleges that the authorized procedure is flawed, but does not state what happened to him. His failure to link his complaints to the facts of his case is fatal. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. United States v. Woods, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); see also United States v. Jones, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

In light of Perez-Batista's failure to state any facts related to his deportation to support his allegations, this Court finds that Perez-Batista has not shown that counsel's conduct fell below professional standards.

   3. *Cultural assimilation*

Finally, Perez-Batista claims that he should have been given a downward departure based upon cultural assimilation and counsel was ineffective because he failed to urge the Court to do so.

In Application note 8 to § 2L1.2 of the sentencing guidelines, a court is permitted to downwardly depart based upon cultural assimilation.

> Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

Application note 8. The focus is on those persons who have lived most of their life in the United States and whose family resides in the United States. Id.

Perez-Batista was born in the Dominican-Republic to Dominican parents according to his testimony at rearraignment. D.E. 38 at p. 26. All of his birth family members, including six siblings, are citizens of the Dominican Republic. D.E. 22 at ¶¶ 30, 31. His father migrated to the

United States in 1989 and has not returned to the Dominican Republic. Id. at ¶ 32. Beginning in 2009, Perez-Batista began an informal marital relationship with a Dominican woman with whom he has a child. The mother and child are citizens of the Dominican Republic. He has two older children by different women, one resides in the United States, the other in the Dominican Republic. Id. at ¶ 34. Perez-Batista came to the United States when he was 20 and remained in the United States until he was deported in 2008. Id. at ¶¶ 30, 35. He came back to the United States in 2011.

Perez-Batista does not meet the first part of the test for cultural assimilation; he has not resided here continuously since childhood. He does not qualify for cultural assimilation and his counsel was not ineffective by not urging consideration of it during sentencing.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Perez-Batista has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This

standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Perez-Batista is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Perez-Batista's § 2255 motion (D.E. 49) is DISMISSED WITH PREJUDICE pursuant to Rule 4(b) of the 2255 Rules and he is DENIED a Certificate of Appealability.

SIGNED and ORDERED this 4th day of November, 2013.

_____
Janis Graham Jack
Senior United States District Judge